UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KLEIN,<br><br>            Plaintiff,<br><br>       vs.<br><br>DR. CONANAN,<br><br>            Defendant. | 1:13-cv-00600-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT CONANAN'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br>(ECF No. 55.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY (20) DAYS |

Michael Klein ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds on the original Complaint filed by Plaintiff on April 25, 2013, against defendant Dr. E. Conanan ("Defendant") for failure to provide adequate medical care in violation of the Eighth Amendment. (ECF No. 1.)

Defendant Conanan filed a motion for summary judgment on the basis that Plaintiff cannot put forth any evidence of deliberate indifference to his medical needs, and that the undisputed evidence demonstrates that Defendant Conanan addressed Plaintiff's medical needs as soon as they were brought to Defendant's attention.  In response, Plaintiff largely requests

1

additional discovery to determine whether Defendant had a duty to provide medical attention at a time before Defendant states he first learned of Plaintiff's medical needs.

After review of all submitted evidence and the statement of undisputed facts, the Court grants Defendant's motion.  Construing all evidence presented in the light most favorable to Plaintiff, the Court finds there is no genuine issue of material fact regarding whether Defendant was deliberately indifferent to Plaintiff's serious medical needs.  All evidence presented establishes that Defendant addressed Plaintiff's medical needs when presented to him and there is no evidence of deliberate indifference.  Plaintiff's requests for additional discovery are untimely and fall far short of raising a triable question of fact.

## I.   PLAINTIFF'S CLAIMS

At the time of the events at issue, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Avenal State Prison (ASP).  Plaintiff brings this civil rights action against Defendant Dr. Conanan, M.D., an employee of the CDCR at ASP.  Plaintiff claims that Dr. Conanan was deliberately indifferent to his serious medical needs, resulting in injury.

Specifically, Plaintiff alleges that when he was transferred to ASP from the Deuel Vocational Institution (DVI) in Tracy, California, he was in possession of his medical records, which indicated that he had Hepatitis C, "with a genome-type disease."  (Complaint at 3 ¶IV.)  Plaintiff alleges that he requested a liver biopsy at DVI, which was denied.  Upon his arrival at ASP, Plaintiff again requested a liver biopsy, which was denied by Dr. Conanan.  Dr. Conanan explained that "my enzyme level and viral load" did not warrant it.  (Id.)  Plaintiff further alleges that he was not prescribed "any medication whatsoever."  (Id.)  Plaintiff alleges that "this failure drastically increased the risk for expidited [*sic*] and irreversible damage being done

to my liver.   This did in fact occur and now resulted in Petitioner's condition being untreatable."[1]  (Id. at 4:2-5.)

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make

---

[1] Plaintiff's exhibits to the Complaint provide evidence that he was transferred to ASP in October 2007 and requested treatment which was denied, and that on July 5, 2012, he was informed of the results of a liver biopsy showing he has untreatable stage four cirrhosis of the liver.  (ECF No. 1 at 7.)

credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), <u>cert. denied</u>, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### B.   Deliberate Indifferent to Serious Medical Needs

Deliberate indifference to the serious medical needs of an inmate is "cruel and unusual punishment" under the Eighth Amendment of the U.S. Constitution.   <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104–06, (1976).  To demonstrate deliberate indifference, "plaintiffs must show that [prison officials] were (a) *subjectively aware* of the serious medical need and (b) failed to adequately respond." <u>Conn v. City of Reno</u>, 591 F.3d 1081, 1096 (9th Cir. 2010), *vacated,* ⸺ U.S. ⸺, 131 S.Ct. 1812 (2011), *reinstated in relevant part,* 658 F.3d 897 (9th Cir. 2011). An inmate challenging denial of treatment must allege that the denial "was medically unacceptable under the circumstances," and made "in conscious disregard of an excessive risk to [the inmate]'s health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

## III.   EVALUATION OF FACTS IN LIGHT OF LAW

In its motion for summary judgment, Defendant claims that he first learned that Plaintiff may require treatment for hepatitis C in 2012 and provided treatment for Plaintiff thereafter.

The facts regarding the treatment from 2012 onward are largely undisputed.   In particular, Plaintiff agreed that the following facts set forth by Defendant were undisputed by Plaintiff, while often claiming they were irrelevant to Plaintiff's claims because they did not address the earlier period of time when he did not receive treatment.  (ECF No. 61, at p. 5-9):

11. After he was assigned as plaintiff's primary care physician, Dr. Conanan met with plaintiff on June 1, 2012, July 5, 2012, August 1, 2012, September 5, 2012, and October 10, 2012 to address plaintiff's hepatitis C concerns.
(Conanan Decl. ¶¶ 10, 12, 13, 15, and 17, Exhs. B, E, F, H, and I.)

12. Dr. Conanan and plaintiff discussed the option to await implementation of the new medication which had less side effects and better results or proceed under the old protocol.  Plaintiff expressed his desire to wait for the new medication to be approved.
(Conanan Decl. ¶ 12.)

13. A liver biopsy is required to assess whether an inmate qualifies for hepatitis C treatment.
(Conanan Decl. ¶ 10.)

15. The liver biopsy revealed that plaintiff already had stage 4 liver cirrhosis at the time that Dr. Conanan began treating him.
(Conanan Decl. ¶ 11, Exh. D.)

16. Dr. Conanan ordered an ultrasound of plaintiff's liver on August 1, 2012, . . . [2] The August 24, 2012 ultrasound showed hepatitis C consistent with the results of plaintiff's June 15, 2012 liver biopsy.
(Dr. Conanan Decl. ¶¶ 13, 14, Exhs. F and G.)

17. CCHCS implemented the new hepatitis C protocol at ASP sometime between mid September 2012 and early October 2012.  This new protocol utilized a more effective medication which had less negative side effects than the medication used under the previous protocol.
(Conanan Decl. ¶¶ 12, 16.)

19. While waiting for the new protocol to go into effect, Dr. Conanan continued to meet with plaintiff on a monthly basis to discuss plaintiff's concerns and treatment options.
(Conanan Decl. ¶¶ 12-15.)

20. On October 10, 2012, Dr. Conanan ordered a PT/INR for plaintiff because plaintiff's PT/INR test was not as current as was required to qualify for hepatitis C treatment under the new hepatitis C protocol.
(Conanan Decl. ¶ 17, Exh. I.)

21. Sometime in December 2012 or early January 2013, plaintiff received a pneumonia vaccination, which was also required for admission to the hepatitis C treatment program.
(Conanan Decl. ¶ 19, Exh. J.)

22. On January 17, 2013, Dr. Conanan sent a request to CCHCS for approval to begin treating plaintiff's hepatitis C under the new hepatitis C protocol.
(Conanan Decl. ¶ 20, Exh. K.)

---

[2] The Court has deleted the portion of this purported fact that was disputed by Plaintiff.

23. On April 11, 2013, Dr. Conanan received notice that CCHCS had approved plaintiff for treatment under the new hepatitis C protocol. (Conanan Decl. ¶ 21, Exh. L.)

24. Plaintiff's hepatitis C treatment began on May 9, 2013.  For the next forty-eight weeks, Dr. Conanan met with plaintiff every one to four weeks to examine him and adjust his medications as necessary. (Conanan Decl. ¶ 22, Exh. M.)

25. At the end of the hepatitis C treatment, plaintiff's viral load was undetectable, meaning that the treatment was successful. (Conanan Decl. ¶¶ 22, 23, Exh. M.)

Based on these undisputed facts, there is no genuine issue for trial regarding the deliberate indifference claim from 2012 onward.  These facts establish that from 2012 on, Defendant responded to Plaintiff's serious medical needs.  Moreover, these facts indicate that Defendant acted with an intent to attend to Plaintiff's health, rather than act in conscious disregard of an excessive risk to his health.

The parties dispute, however, whether Defendant had knowledge that Plaintiff required medical care prior to 2012.  Defendant has submitted the Declaration of the Defendant in support of Defendant's Motion for Summary Judgment.  (ECF No. 55-3.)  He declares under oath that he "neither met with Mr. Klein nor had knowledge of his medical condition at any time prior to 2012."  (ECF No. 55-3, ¶ 7.)  Defendant provides the following explanation for his role prior to 2012:

Between 2007 until August 2014, I was a physician and surgeon for CDCR at ASP.  In my capacity as a physician and surgeon, I saw patients to whom I was assigned as their primary care physician at ASP.

Between 2007 and August 2014, I was also the hepatitis C "champion" at ASP. In CDCR terminology, a doctor is referred to as a "champion" in the field in which he or she is assigned as the designated clinician for the facility.  In my capacity as the hepatitis C clinician, I treated inmates with hepatitis C after being referred their care by their primary care physician.  If an inmate's primary care physician determined that the inmate did not qualify for hepatitis care, I was not made aware of that inmate's needs.  I also provided hepatitis C care to inmates who I independently evaluated in my capacity as their primary care physician. . . .

During 2007, I was not Mr. Klein's primary care physician and his care was

6

> never referred to me.  I neither met with Mr. Klein nor had knowledge of his
> medical condition at any time prior to 2012.
>
> According to Mr. Klein's medical records, his hepatitis C concerns were
> addressed by Nurse Practitioner Isabel Mathos, Physician's Assistant Nancy
> Siegrist, and Certified Physician's Assistant-C Julie Kelly at ASP during fall
> 2011 and early 2012.  None of these professionals referred Mr. Klein's care to
> me and I had no knowledge of Mr. Klein's medical condition during this period.

(ECF No. 55-3, ¶¶ 3-8.)

Defendant also attaches and authenticates medical notes from 2011 onward.  (ECF No.
55-3, Exhibits A-L to Declaration of E. Conanan.)  These notes corroborrate the version of
events set forth by Defendant for the time period of 2011 onward, and indicate that Plaintiff
received treatment beginning in July 2012 once Plaintiff began seeing Defendant.

Those medical notes do not cover the period prior to 2011.  They do however include
certain references to the earlier period of time.  On September 15, 2011, the notes state in
relevant part:

> The patient is a new arrival from North Kern State Prison with history of
> hepatitis C, genotype 1b.  The patient says that he came back.  Last time he was
> not able to great a treatment with _____[blank in original].  He does not know
> [sic] he wants to have treatment right now.  He says that he is going to do more
> research and think about it. . . . I discussed also heptatis C treatment benefits and
> risks on taking it.  He will think about it and he will return to the clinic.

(ECF. No. 55-3 at 10.)  On June 1, 2012, the medical notes state in relevant part:

> The patient has been known to have hepatits C since about 2009 and review of
> records shows that the patient has always been ordered to have viral load for his
> hepatitis C but never been offered treatment or even a liver biopsy.  When I
> asked the patient, it was confirmed that nothing has been discussed about his
> treatment plan.  He states that he always is asked to have his blood drawn to be
> tested by no specific plan reported.  The patient has never been treated for
> hepatitis C in the past.

(ECF No. 55-3 at 16).  Thus, there is evidence that Plaintiff previously saw someone regarding
his hepatitis, but did not receive treatment.  There is no description of why he did not receive
treatment earlier.  Nevertheless, there is no indication that Defendant was involved in the
earlier consultations or that Defendant was aware of Plaintiff's diagnosis regarding Hepatitis C
before Defendant saw him in 2012 and began treating Plaintiff.

Plaintiff opposes Defendant's motion with his own Declaration.  (ECF No. 61 at 31-35.)
Plaintiff offers this version of events regarding his care prior to 2012:

> In October of 2007, I arrived at ASP where I sought a liver biopsy and treatment
> for my Hepatits C. . . .  My Primary Care Physicians (PCP), who I'm not certain
> of who that was during 2007 through 2009 had ordered blood tests when I
> requested a biopsy and treatment.  Because I am still unaware of who my PCP's
> were in 2007-2009, I have not been able to properly amend the complaint to add
> all defendants, thus further discovery is needed. . . . Despite having elevated
> ALT levels, almost 20 years of being infected with hepatitis C, being over 45
> years of age, and my request for a liver biopsy from defendant and my PCPs, I
> paroled in 2009 without a liver biopsy nor treatment.  On parole, I did not have
> insurance nor a job and could not afford a biopsy or treatment.  Subsequently I
> was arrested and rehoused as ASP in August of 2011 where I again sought a
> liver biopsy from defendant and my PCPs but was denied.  Ten (10) months
> later in June of 2012, defendant assumed the position of my PCP and ordered a
> liver biopsy that same day, which revealed I had Stage 4 Cirrhosis of the liver.

Plaintiff's version of events largely corroborates Defendant's in that Defendant was not
Plaintiff's primary care physician before June of 2012 and began treating Plaintiff's condition
after that time.

Plaintiff also attempts to demonstrate Defendant's knowledge of his condition by
pointing the fact that Defendant Conanan was the HCV-treating clinician between 2007 and
2014.  Indeed, Defendant admits that he served this role, but explains that he would
nevertheless only know of a hepatitis C issue if the patient saw him directly or the patient was
referred by a primary care physician:

> Between 2007 and August 2014, I was also the hepatitis C "champion" at ASP.
> In CDCR terminology, a doctor is referred to as a "champion" in the field in
> which he or she is assigned as the designated clinician for the facility.  In my
> capacity as the hepatitis C clinician, I treated inmates with hepatitis C after
> being referred their care by their primary care physician.  If an inmate's primary
> care physician determined that the inmate did not qualify for hepatitis care, I
> was not made aware of that inmate's needs.  I also provided hepatitis C care to
> inmates who I independently evaluated in my capacity as their primary care
> physician.

(Declaration of Dr. Conanan, ECF 55-3 at 2.)  In response, Plaintiff points to various
documents standing for the proposition that the primary care physician refers appropriate

patients for treatment to the HCV-treating clinician.  (ECF No. 61 at 130.)  Plaintiff's purported facts appear consistent with Dr. Conanan's explanation however, i.e., that the primary care physician must refer a patient to the HCV-treating clinician before that clinician knows of the patient's hepatitis medical needs.  Plaintiff has not put forth any evidence indicating that Dr. Conanan knew of Plaintiff's medical needs prior to 2012, or that Dr. Conanan would have known of those needs by virtue as serving as the prison's HCV-treating clinician.

Based on the evidence presented, the Court finds that there is no genuine issue of material fact precluding summary judgment.  Based on the evidence presented, construed liberally in favor of the Plaintiff, the Court recommends an order that Plaintiff has failed to present evidence indicating that Defendant Conanan acted with deliberate indifference to the serious medical needs of an Plaintiff.  Plaintiff has failed to present evidence indicating that Defendant was subjectively aware of the serious medical need, or that Defendant failed to adequately respond.  Accordingly, Defendant Conanan is entitled to summary judgment.

Although the basis of the Court's recommendation is Defendant Conanan's lack of knowledge of Plaintiff's medical condition before becoming his primary care physical in 2012, the overall timeline is worth noting.  Plaintiff was infected with hepatitis C for approximately 20 years.  When Plaintiff was on parole, Plaintiff did not have insurance and could not afford any treatment on his own.  (ECF No. 61 at 33.).  Defendant Conanan is the doctor who ultimately successfully treated Plaintiff after 48-weeks of supervised treatment.  (ECF 55-3 at 6.)  Under the circumstances, Plaintiff's attempts to hold Defendant Conanan liable for deliberate indifference to Plaintiff's medical needs in violation of the U.S. Constitution does not seem fitting.

## IV.   PLAINTIFF'S REQUEST FOR CONTINUANCE TO CONDUCT ADDITIONAL DISCOVERY

In Plaintiff's opposition to summary judgment, he requests a continuance to conduct further discovery regarding Defendant Conanan's role as an HCV-treating clinician, and of his medical records from his earlier prison stay.

Plaintiff's request is denied.  The Court, Magistrate Judge Austin, already denied Plaintiff's motion to modify the scheduling order and for issuance of a subpoena on June 22, 2015.  (ECF No. 53).  In that order, the Court explained:

> The discovery phase for this case lasted eight months, from October 8, 2014 to June 8, 2015.  A review of the record shows that Plaintiff sought out his medical records even before discovery was opened, when he filed a motion on May 19, 2014 seeking to review his medical records at ASP.  (ECF No. 19.)  On May 21, 2015, Defendant responded to Plaintiff's motion, claiming that Plaintiff was scheduled for a review of his medical records to occur on May 22, 2014.  (Decl. of Kelly A. Samson, ECF No. 21 at 3 ¶7.)  Plaintiff did not file a reply to Defendant's response or indicate that he was unable to review his medical records on the scheduled date. (See ECF No. 24.)
>
> Further, Plaintiff acknowledges that "[o]n or about October 6, 2014, Plaintiff request[ed] his medical file from A.S.P.;" on January 9, 2015, Defendant provided medical records pursuant to a request for production of documents; and "[o]n all occasions disclosure of medical records were provided."  (ECF No. 52 at 1:19-24.)  Based on this record, Plaintiff knew by January 9, 2015, which documents were available from his medical file at ASP.  Now, five months later, Plaintiff requests the court to reopen discovery so he can begin another search for medical records from 1990-2007, purportedly kept in Nevada.
>
> Plaintiff has not shown that he used due diligence in attempting to obtain his earlier medical records before discovery closed on June 8.  Plaintiff provides no explanation why he did not attempt before now to discover documents which he knew, in January 2015, were not available from his ASP files.  Therefore, Plaintiff's motions shall be denied.

(ECF No. 53 at 2-3.)  The Court confirms that earlier ruling and denies the request for a continuance.

Moreover, it does not appear that Plaintiff is aware of facts "essential to jusify its opposition," under Federal Rule of Civil Procedure 56(d).  Plaintiff does not indicate a likelihood that additional facts would reveal that Defendant Conanan was in fact Plaintiff's primary care physician at an earlier time.  Rather, it appears that Plaintiff seeks discovery about additional potential defendants to add to the litigation in addition to, or in lieu of, Defendant Conanan.  The Court declines to continue the summary judgment motion for that purpose.

\\\

**V.    PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

In connection with his opposition to Defendant's Motion for Summary Judgment, Plaintiff requests that the Court take judicial notice of (1) The "Hepatitis C Clinical Management Program," and (2) the "Hepatitis C Guidelines."  Federal Rule of Evidence 201 provides that "The court may judicially notice a fact that is not subject to reasonable dispute because it: **(1)** is generally known within the trial court's territorial jurisdiction; or **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

The Court finds that the documents attached are not the sort of facts that are subject to judicial notice because they are not facts that are generally known or from sources whose accuracy cannot be questioned.  That said, Plaintiff's declaration attests that "these documents are medical policies and procedures implemented by CDCR and are public records which were in effect at the time . . . ."  (ECF No. 61 at 2.)  They are thus documents authenticated by Plaintiff and properly submitted in connection with summary judgment.

The Court thus recommends denying Plaintiff's motion for judicial notice, but considering the documents as admissible evidence submitted in connection with Plaintiff's motion for summary judgment.

**VI.    CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, the Court finds no disputed questions of fact that preclude summary judgment on Plaintiff's claim for deliberate indifference to medical care in violation of the Eighth Amendment against Defendant Conanan.   Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Conanan's motion for summary judgment, filed on August 17, 2015, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these findings and recommendations, any party may file

written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 24, 2016**              /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

12